IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| PARADISE DELI <br> 226 Newark Ave <br> Jersey City, New Jersey 07302 <br><br> Plaintiff <br><br> v. <br><br> UNITED STATES OF AMERICA <br><br> Defendant. | \* <br> \* <br> \* <br> \* <br> \* Civil Case No._____ <br> \* <br> \* **ORDER** <br> \* |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE AND MOTION FOR EMERGENCY STAY</u>

### I. PARTIES

Plaintiff **PARADISE DELI**, owned by Catrin Youssef and located at 226 Newark Ave, Jersey City, NJ 07302 ("Paradise", hereby files this ORDER TO SHOW CAUSE AND MOTION FOR EMERGENCY STAY ("Motion") against Defendant **UNITED STATES of AMERICA** ("Defendant"). In support of the complaint, Defendant states as follows:

### II. JURISDICTION

A store may seek judicial review of a United States Department of Agriculture Food and Nutrition Service ("FNS") determination disqualifying it from participating in SNAP by filing a complaint against the United States. 7 U.S.C. § 2023(a)(13). "The suit ... shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action

in issue...." Id. § 2023(a)(15). Because these cases are trials de novo, the court may not "merely ... determine whether the administrative findings of the agency are supported by substantial evidence." Freedman v. U.S. Dep't of Agric., 926 F.2d 252, 261 (3d Cir. 1991). Rather, the court must "examine the entire range of issues raised" and "reach its own factual and legal conclusions." Id. The court is not bound by the administrative record and may consider matters outside of the record considered below. Id.

### III. FACTUAL AND PROCEDURAL BACKGROUND

Paradise Deli has been serving its Jersey City community faithfully for the past eight years. It has been operated by owner, Catrin Youssef, and husband Wagdy Abdelmissih. Paradise sells specialized items indigenous to the neighborhood making it a favorite for families, large and small, to acquire group meals together. It is the only store in a five-mile radius that is open twenty-four hours a day, making it very popular in the area and often the only place to go for the indigenous food and items. The items are specialized and cater to the neighborhood's various ethnic backgrounds. As a result of the highest inflation rates higher in half a century, many of the prices of the items have gone up, leading families, large and small, to buy in bulk.

On a notice dated September 1, 2022 the United States Department of Agriculture Food and Nutrition Service ("FNS") charged that Paradise had trafficking, as defined in Section 271.2 of the Supplemental Nutrition Assistance Program (SNAP) benefits in transactions involving Pandemic EBT benefits.

Attorneys for Paradise explained the above facts with documentary evidence in a September 22, 2022 letter to USDA Food and Nutrition Services. They have been attempting to schedule a telephonic conference with the FNS since September 15, 2022 and are willing to

explain, with evidence, why all the accusations of fraud and trafficking are unfounded and explainable by Paradise's business and the extraordinary circumstances the country is in. Further, an October 5, 2022 letter addresses the 402 flagged transactions amounting to $23,310.51, thus an average of merely $57.98. *See* October 5 Letter, "Exhibit A".

> [A] prototypical transaction involving a family of five (two parents and three children), you will find that the types of transactions flagged by the letter are actually quite ordinary and to be expected:
>
> Five combo orders of a cold sandwich, bag of chips, and canned soda........................$74.95
> Ten pounds of cold cut deli meats................................................................$149.90
> Five 'Naked' brand smoothies.......................................................................$29.95
> Total………......................................................................................................$254.80
> *Id.*

In a letter dated October 13, 2022, FNS informed Paradise that they would be permanently disqualified from SNAP and were ineligible for a trafficking Civil Money Penalty. Paradise has requested a hearing on the matter. However, during the review process, which may take an uncertain amount of time, Paradise will not be able to accept EBT benefits until a decision is rendered and Defendant will not be liable for Paradise's lost revenue. Thus, Paradise seeks a stay of this determination until a hearing could be had as the loss of business would be devastating for Paradise and the surrounding community that depends on them.

### IV. LEGAL STANDARD

SNAP is a government program operated by the FNS pursuant to 7 U.S.C. §§ 2011–2036. *See* 7 C.F.R. § 271.3. The program's mission is "in order to promote the general welfare, to safeguard the health and well-being of the Nation's population by raising the levels of nutrition among low-income households." 7 U.S.C. § 2011. To achieve this mission, SNAP supplements low-income families' food-purchasing funds in the form of an electronic benefit transfer ("EBT")

card, which operates like a debit card and can be used only for the purchase of food at approved SNAP retailers. *Id.* §§ 2013(a), 2016(j).

Approved SNAP retailers have one or more EBT terminals, which the retailer uses to swipe the SNAP beneficiary's EBT card when that beneficiary is making a SNAP-eligible purchase. The beneficiary enters a personal identification code on the terminal's keypad, and the amount spent on the corresponding purchase is deducted from the beneficiary's EBT card balance. The EBT terminal generates a receipt for each transaction, and the purchase amount is credited to the retailer's bank account within two business days. The FNS can monitor SNAP retailers' EBT transactions electronically. *See* 7 C.F.R. § 278.6.

Pursuant to 7 U.S.C. § 2023(a)(17), "[d]uring the pendency of ... judicial review, or any appeal therefrom, the administrative action under review shall be and remain in full force and effect, unless on application to the court on not less than ten days' notice, and after hearing thereon and a consideration by the court of the applicant's likelihood of prevailing on the merits and of irreparable injury, the court temporarily stays such administrative action pending disposition of such trial or appeal."

To qualify for a preliminary injunction under Rule 65, a plaintiff bears the burden to satisfy four requirements. First, a plaintiff "must establish that he is likely to succeed on the merits[.]" *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S.20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). Although that standard does not require "a 'certainty of success,' " the plaintiff "must make a clear showing that he is likely to succeed at trial.' " *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (citation omitted). However, "a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Benisek v. Lamone*, ⎯⎯ U.S. ⎯⎯, 138 S. Ct. 1942-1944, 201 L.Ed.2d 398 (2018), (citing *Winter*, 555 U.S.

at 32, 129 S.Ct. 365). "Rather, a court must also consider whether the movant has shown 'that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Benisek*, 138 S. Ct. at 1943-44 (quoting *Winter*, 555 U.S. at 20, 129 S. Ct. 365).

Notably, the Food Stamp Act provides that a court may temporarily stay administrative action pending trial upon consideration of only two factors: (1) the likelihood of prevailing on the merits and (2) irreparable harm. 7 U.S.C. § 2023(a)(17); *see Ahmed v. United States*, 47 F. Supp. 2d at 393 (S.D.N.Y. 1999); *Young Jin Choi v. United States*, 944 F. Supp. 323, 325 (S.D.N.Y. 1996). Further, "[b]ecause preliminary injunction proceedings are informal ones designed to prevent irreparable harm before a later trial governed by the full rigor of usual evidentiary standards, district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted." *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016)

With respect to the review of the administrative agency's decision, there is also a two-step process. First, the district court "shall [conduct] a trial de novo" to "determine the validity" of the FNS's finding that the retailer violated SNAP regulations. *Id.* § 2023(a)(15). In the context of SNAP, de novo review means that the retailer bears the ultimate burden of proving by a preponderance of the evidence that the alleged violations did not occur. To carry this burden, the plaintiff "may offer any relevant evidence available to support his case, whether or not it has been previously submitted to the agency." *Redmond v. United States*, 507 F.2d 1007, 1012 (5th Cir. 1975). Therefore, in reviewing the agency decision, the court is not bound by the administrative record. Second, courts apply the "arbitrary and capricious" standard, which asks merely whether

the determination is unwarranted in law or without justification in fact, to assess the validity of the sanction. *Betesfa, Inc. v. United States*, 410 F. Supp. 3d 132, 138 (D.D.C. 2019)

## V. ARGUMENT

**1- Likelihood of Success on the Merits**

While permanent disqualification is the presumptive sanction where a retailer has trafficked in SNAP benefits, it is a severe remedy without trial in this instance especially considering the amount of evidence that Plaintiff, Paradise Deli ("Paradise") provides to show their charges are perfectly reasonable given their clientele, hours, and inflation. *See* 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(e)(1)(i). Moreover, the Agency has discretion to impose a CMP instead of a penalty of permanent disqualification where a retailer demonstrates, with substantial evidence, that it had established and implemented effective policies and programs to prevent SNAP violations. *See* 7 U.S.C. § 2021(b)(3)(B). This is certainly a preferable alternative to removing a neighborhood fixture from the community, although the evidence does not support this much of a penalty either.

The evidence offered by the FNS is all together rather weak. Their only charge is a series of transactions "that are large based on the observed store characteristics and recorded food stock" and that multiple transactions made from accounts of individual household, ie repeat customers. They provide 402 flagged transactions from September 2021 until February 2022 that total amounts to $23,310.51, thus an average of merely $57.98, none larger than $179.54 and none less than $36.75. This amount is far lower than most cases alleging large EBT transactions. "Plaintiffs' own receipts confirm that within seconds of that transaction, the African Store generated a receipt for a SNAP transaction worth $286.10" *Hajifarah v. United States*, 779 F. Supp. 2d 191, 201 (D. Me. 2011).

Cases where suspensions were upheld typically included much more severe violations and significantly less evidence. *7-Eleven #22360 v. United States*, 560 F. Supp. 3d 892, 916 (D. Md. 2021). Paradise have provided credible how this total can easily be accrued by a family of five purchasing freshly made sandwiches the deli makes along with drinks, sides, and household goods. Paradise proprietors take pains to make sure they comply with all the requirements for EBT and P-EBT transactions. Further, the transactions are at all times of the day as it is the only deli open at all times in the area. Thus, many customers know they can make repeat trips if they do not remember to purchase something. Additionally, the store remains well stocked as evidenced by attached shipment receipts and photographs. *See* Inventory and Shipment Receipts, "Exhibit B"; *See* Photographs of store stock, "Exhibit D-K".

Please note, it has been difficult for the proprietors to collect all of this evidence while maintaining their all-day deli. Further, the transaction data is confusingly arranged by amount rather than date or by household, making it difficult to ascertain the exact nature of the accusations and properly rebut them. Thus, an injunction is necessary to provide enough time so that each suspicion the FNS has can be properly addressed. The time period given was not substantial enough to warrant permanent disqualification.

**2- Irreparable Injury**

As other courts have held, "[l]osing a substantial percentage of a store's business, especially when coupled with the closing of the store, is enough to constitute irreparable harm. *See Phany Poeng, v. United States,* 167 F.Supp.2d 1143 (S.D.Cal.2001) ("The majority of district courts addressing this issue have concluded that a loss of at least thirty percent of a plaintiff's business can constitute irreparable harm."). In Paradise's most recent Merchant Statement, more than twenty percent of their revenue came from EBT. See North American Bancard Credit Machine

Statement September 2022, "Exhibit C". They additionally testify that during certain periods, anywhere from 40% to 60% of their revenue comes from SNAP benefits depending on their issuance. Loss of such revenue would be devastating and likely means they would have to cease operating.

Further, the decision may upend key facets of Paradise's business model that includes being open all day and night, they offer specialized indigenous products, and they cater to a customer base who can only purchase necessary goods via SNAP benefits for their family. Losing the resource that Paradise Deli would greatly impair the surrounding community needlessly as Paradise can demonstrate their business has been entirely legitimate. The central issue is the difficulty in collecting the information and evidence to address FNS concerns and that their employee who is handling the case is currently on vacation. Paradise has been taken aback and unprepared for the surprising accusations as they have been serving the community for eight years, twenty-four hours a day with only a minor pandemic-related offense. This is similar to other cases where an injunction has been granted, "the disqualification of the Store upon its first offense in 16 years of business seems to be an "unduly harsh" policy and "runs contrary to congressional intent in implementing the Hunger Prevention Act of 1988." *Ahmed, v. United States*, 47 F. Supp. 2d 397, 393 (W.D.N.Y. 1999); *See 7-Eleven #22360* 560 F. Supp. 3d at 914-915.

## VI. CONCLUSION

The present case fits well within the statutory framework for granting an emergency stay to protect **PARADISE DELI** from the irreparable harm that would result from disqualifying them from EBT, P-EBT payments and the SNAP program while their administrative case is pending.

Paradise Deli provides substantial evidence that demonstrates a great likelihood of prevailing on the merits.

RESERVATION AND NON-WAIVER Plaintiff reserves the right to assert any additional and further claims as may be revealed by additional information received or as may be warranted by discovery.

WHEREFORE. Based upon the above it is respectfully requested that this Court stay the permanent disqualification of Plaintiff from the Supplemental Nutrition Assistance Program, pending hearing on the matter, and that Defendant reimburse Plaintiff for lost revenue and costs and attorney fees..

Date: October 20, 2022

Respectfully submitted,

*James R. Lisa*
James R. Lisa (Bar ID. 035211983)
Law Offices of James Lisa
910 Bergen Ave, Suite 209
Jersey City, NJ 07306
(201) 653-2888
Jameslisalaw@gmail.com

*Attorney for Plaintiff Paradise Deli*